**C. O. MORGAN, Appellant,**

v.

**C. B. O'BEIRNE, Appellee.**

No. 17103.

Court of Civil Appeals of Texas.

Dallas.

June 7, 1968.

Clifford S. Dillard, Dallas, for appellant.

Charles O. Shields, Dallas, for appellee.

DIXON, Chief Justice.

Appellee C. B. O'Beirne, doing business as C. B. O'Beirne & Company, an insurance agent, sued appellant C. O. Morgan on sworn account.

Appellant answered with a sworn denial. This cast the burden on appellee to establish every item of the account by competent evidence. Boucher v. City Paint & Supply, Inc., 398 S.W.2d 352 (Tex.Civ.App., Tyler 1966, no writ); Burtis v. Butler Bros., 243 S.W.2d 235 (Tex.Civ.App., Dallas 1951, no writ).

In a trial before the court sitting without a jury judgment was rendered for appellee for $861.41 plus $250 attorney's fee. Appellee contended in the trial court and contends here that he successfully discharged his burden of proof by the identification and introduction into evidence of business records pursuant to Art. 3737e, Vernon's Ann.Civ.St.

Appellant objected to the introduction of the records in the trial court and contends here that they were improperly introduced because the balance claimed to be due is based on an audit which was referred to in other records, but was itself never introduced into evidence.

## FACTS

C. O. Morgan for some years was in the used car business. He carried numerous policies of insurance, both business and personal, covering accident, fire, theft, garage liability, personal articles, a yacht policy and a floater policy—all purchased through appellee as agent. Appellant maintained a running account with appellee for the payment of the premiums on these policies on which account he made monthly payments.

One of the items on the account was for the premium on a garage liability policy taken out in 1964 for one year and renewed in 1965 for another year. The full amount of the premium on this policy could not be calculated until the end of the policy year, for the total premium due depended on appellant's employee payroll during the year. Following the audit the additional premium would be computed and added to the initial estimated premium.

The principal witness for appellee was Allen Terrell, who has been in the insurance business since 1931, twenty-three of such years as an associate of appellee O'Beirne.

Terrell identified six documents as business records which were admitted in evidence as exhibits. They are as follows:

No. (1) is the primary garage liability policy prepared in appellee's office under the direction of Terrell in the usual course of business.

No. (2) is an audit billing dated November 2, 1965 showing the payroll totals of appellant for the policy year and the additional premium due based on appellant's payroll. This document was not prepared in appellee's office. It was prepared in the home office of United States Casualty Company in Hartford, Connecticut, the insurance carrier for whom appellee is an agent. It is made out to "Morgan Motors" and was forwarded by the insurance carrier to appellee O'Beirne. Terrell testified that he at once sent this invoice to appellant, retaining copies in the files of appellee. He testified that this was in the usual course of business.

No. (3) is a premium invoice dated November 2, 1965, prepared in the home office of the insurer United States Casualty Company in Hartford, Connecticut. It shows the payrolls of appellant *to* April 1, 1965, and *after* April 1, 1965 in each of three different classes of employees. It lists the premium due under each class and computes the additional premium due. This is shown to be $680.49 under "B1" (bodily injury) and $275.96 under "PD" (property damage). The original and four copies of this document were forwarded to appellee. Terrell testified that he transmitted the original to appellant and kept four copies in appellee's files. This was in the usual course of business.

No. (4) is an invoice prepared under Terrell's direction in the office of appellee. It is dated November 16, 1965 addressed to appellee. It states the total premium on the garage policy following final credit to be $956.44. Terrell testified that this invoice was sent to appellant at the same time Exhibit No. 3 was transmitted to appellant.

No. (5) is a letter dated May 4, 1966 from appellee to appellant at Wichita Falls, Texas, to which city appellant had moved some time previously. In it appellee expressed regret that appellant had not contacted him in regard to the account and since appellee had not received payment the policies were being cancelled. The letter further stated that when the policies had been processed for cancellation, appellant would be advised of the outstanding amount due the agency.

No. (6) is a document consisting of three large ledger sheets showing in detail the account of appellant with appellee over a considerable period of time. It contains numerous entries. It was kept in appellee's office under Terrell's supervision. It shows that at the time the additional charge of $956.44 was made appellant owed $795.57 in connection with other charges—a total of $1,752.01 then due from appellant.

It is undisputed that appellant subsequently made payments on the account sufficient to pay the item of $795.57. It is also

undisputed that appellant Morgan made further payments of $50 on July 1, 1966 and $25 on October 10, 1966, thus reducing the amount owed to $864.51—the amount for which appellee sued.

Terrell testified that he told appellant that the audit had been done by the firm of Atwell, Vogel & Sterling, a national auditing firm, which makes audits for garage liability policies as agent for the insurance carrier. Terrell himself had not made the audit or been present when it was made. Therefore he could not swear of his own personal knowledge that the audit was accurate. However, he informed appellant that if there was any problem he would have the auditor come back and recheck the payroll figures. Appellant promised to let him know, but he did not do so.

Terrell said that subsequently in telephone conversations appellant promised to pay the account.

C. B. O'Beirne also testified. His testimony in the main corroborated that of Terrell. He stated that he had talked to Morgan in Wichita Falls and Morgan promised to pay.

Appellant Morgan testified that nobody ever came over and audited his books. He denied that he had ever told O'Beirne or Terrell that he owed the money in controversy.

It was stipulated by the parties in open court that the court might fix the attorney's fee "for the Plaintiff in the event the Plaintiff is entitled to recover without the necessity for expert testimony."

The trial court made findings of fact as follows: (1) On July 5, 1964 appellee caused a garage liability policy to issue to run until 1965, the total premium to be calculated after an audit of appellant's books at the end of the year to ascertain appellant's payroll; (2) an audit was made showing premiums due of $956.44; (3) appellant maintained an open account with appellee to which the above premiums were added; (4) appellant made payments on said account of $50 on July 1, 1966 and $25 on October 10, 1966; (5) after said payments $864.51 was due on said account; (6) appellee made written demand for payment on June 28, 1966 and oral demands at various times; (7) $250 is a reasonable fee for appellee's attorney; (8) insurance policies were issued and delivered to appellant, who received consideration for the premiums charged.

## OPINION

In his brief appellant Morgan presents nine points of error. All of them are bottomed on appellant's contention that no competent evidence was offered to prove that an audit of his books was made. Two of appellant's points complain of the allowance of $250 attorney's fee. However the only ground urged against the allowance of the attorney's fee is that appellee failed to show by competent evidence that appellant owed any sum whatever to appellee on open account or otherwise. And as we stated earlier, the parties stipulated that the court might fix the attorney's fee for appellee in the event appellee should be entitled to recover.

Appellee's position is that he made out a case against appellant under the Business Records as Evidence Act, Art. 3737e, V.A. C.S., which is an exception to the hearsay rule.*

* Section 1 of the Act provides that a memorandum or record of an act, event or condition shall be competent evidence of the occurrence of the act or event, or the existence of the condition if the judge finds that:
    (a) It was made in regular course of business;
    (b) It was the regular course of business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;
    (c) It was made at or near the time of the act, event or condition.
    Section 2 of the Act provides that the identity and mode of preparation of the memorandum or record may be proved

We believe that the business records offered by appellee were admissible in evidence pursuant to the terms of Art. 3737e, V.A.C.S. The witness Terrell was the supervisor and custodian of appellee's buesiness records. It is true that some of the items in the records in Terrell's custody were hearsay so far as Terrell was concerned, but that fact, under the express terms of the statute, affected their weight and credibility, not their admissibility. Abel v. State, 395 S.W.2d 641, 643 (Tex.Cr.App. 1965); Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298, 305 (Tex.Sup. 1962); Fluitt v. Valley Stockyards Co., 384 S.W.2d 917 (Tex.Civ.App., San Antonio 1964, writ ref'd n. r. e.); 2 McCormick & Ray, "Texas Law of Evidence", § 1252, p. 110. As evidence they were sufficient to support the court's findings, which were in favor of appellee as to all material facts.

If we be mistaken in the above holding we are nevertheless convinced that the judgment of the trial court must be sustained for another reason. There is testimony in the record by both Terrell and O'Beirne that appellant Morgan admitted that he owed the debt in controversy. It is undisputed that he made twc partial payments on the debt as late as July 1, 1966 and October 10, 1966. Morgan denied that he admitted to O'Beirne or Terrell that he owed the debt. It is true that the testimony in regard to appellant's admissions is not conclusive but it raises fact issues. In this case the testimony was obviously believed by the trial court and it is of sufficient probative force to support the court's findings. Bennett v. Romos, 151 Tex. 511, 252 S.W. 2d 442 (1952); Texas Employers' Ins. Ass'n v. Varner, 20 S.W.2d 334 (Tex.Civ.App., Beaumont 1929, no writ); Fidelity & Casualty Co. of N.Y. v. Branton, 70 S.W.2d 780 (Tex.Civ.App., Beaumont 1934, writ dism'd); Louisiana Ry. & Nav. Co. of Texas v. Cotton, 1 S.W.2d 393 (Tex.Civ.

App., Dallas 1927, no writ); Hart-Parr Co. v. Krizan & Maler, 212 S.W. 835, 838 (Tex. Civ.App., Austin 1919, no writ); Lester v. Hutson, 184 S.W. 268 (Tex.Civ.App., Amarillo 1916, writ dism'd); Gulf, C. & S. F. Ry. Co. v. Combes & Rector, 80 S.W. 1045 (Tex.Civ.App. 1904, no writ); 2 McCormick & Ray, "Texas Law of Evidence", §§ 1129, 1150, 1161.

All of appellant's points are overruled.

The judgment of the trial court is affirmed.

by the testimony of the entrant, custodian or other qualified witness *even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack* *of personal knowledge may be shown to affect the weight and credibility of the memorandum or record, but shall not affect its admissibility.*